UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


GULFSTREAM DEVELOPMENT
GROUP, LLC,

     Plaintiff,

v.                                       CASE NO: 8:08-cv-1643-T-23MAP

JEREMY A. SCHWARTZ, et al.,

     Defendants.

v.

BRIAN HAAG, et al.,

     Third Party Defendants.
_____/

GULFSTREAM DEVELOPMENT
GROUP, LLC,

     Plaintiff,

v.                                       CASE NO:  8:08-cv-1666-T-23TGW

JEREMY A. SCHWARTZ, et al.,

     Defendants.

v.

BRIAN HAAG, et al.,

     Third Party Defendants.
_____/

## **<u>ORDER</u>**

In case no. 8:08-cv-1643-T-23-MAP, the National Credit Union Administration, as

Liquidating Agent for Huron River Area Credit Union ("NCUA"), moves (Docs. 119) to

dismiss the third-party claims against NCUA.  Jeremy A. Schwartz, Deena Schwartz,

Sharon L. Schwartz, David J. Schwartz, Mitchell J. Davie, Victor Selvaggi, Jr., and Joann Selvaggi (collectively, the "third-party plaintiffs") respond (Doc. 127) in opposition, and NCUA (Doc. 145) replies with leave of court.

## BACKGROUND

Most or all of the third-party plaintiffs entered into a construction loan agreement with the Construction Loan Company ("CLC") and executed a promissory note and mortgage (the "notes") in favor of CLC, and CLC later assigned the notes to Huron River Area Credit Union ("Huron").[1] On November 17, 2007, Huron was placed into involuntary liquidation by the NCUA Board, which was appointed liquidating agent of Huron pursuant to 12 U.S.C. § 1787(a)(1)(A).

The third-party plaintiffs allege that they were duped by various parties acting in concert, including Gulfstream Development Group, LLC ("Gulfstream"), the United Mortgage Corporation, and CLC, to purchase as an investment real property in Sarasota County. On or about July 3, 2007, Gulfstream sued the third-party plaintiffs and others in the Circuit Court for Sarasota County and alleged breach of construction contracts and related claims. On or about August 9, 2007, the third-party plaintiffs served their "Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint." (Doc. 7 [the "complaint"]). On December 28, 2007, NCUA removed the action to the United States District Court for the Middle District of Florida, Fort Myers Division, case no. 2:07-cv-844-FtM-29DNF. An August 8, 2008, order (Doc. 115) consolidates the

---

[1] But see Doc. 7 ¶ 329(e) & (f) (alleging that Mitchell Davie executed a construction with United Mortgage [not CLC], which loan was assigned to "Vision Capital Enterprises, Inc." [not to Huron]).

action with case no. 2:08-cv-52-FtM-29DNF and transfers the consolidated actions to the Tampa division.

The complaint alleges that, in connection with the notes, "the Banks" (defined to include both CLC and Huron, although the complaint alleges no involvement by Huron other than in its capacity as assignee of the notes) represented (a) that the Banks would inspect the pertinent housing units to ensure that the units were built in accord with the specifications of the third-party plaintiffs' contracts (the "building contracts") with Gulfstream; (b) that the Banks would not disburse loan funds to the builder "unless disbursed pursuant to the [building contracts]," that is, "for Units built according to contract specifications"; and, later, (c) that "the inspections had in fact been completed [and] that the . . . Units were being built to specifications . . . ." The complaint alleges that, despite these representations, the Banks disbursed the construction loan funds without inspections. Finally, the complaint alleges that CLC knew when approving the construction loans that certain third-party plaintiffs (Sharon Schwartz, David Schwartz, Mitchell Davie, and Victor Selvaggi) could not repay the notes, and CLC knowingly misrepresented unspecified facts (Doc. ¶ 373) to Sharon Schwartz, David Schwartz, Mitchell Davie, and Victor Selvaggi "regarding their financial status and Banks' approval of their Construction Loans" to induce them (Doc. ¶ 375) to enter the construction loans. The complaint asserts against Huron claims for mortgage fraud (count V), fraud in the factum (count VIII), breach of contract (count XVI), rescission (count XVII), misrepresentation (count IXX), promissory estoppel (count XXII), and violation of the Florida Deceptive and Unfair Trade Practices Act (XXVIII).

- 3 -

## DISCUSSION

The NCUA argues that the third-party plaintiffs' claims are barred by 12 U.S.C.

§ 1787(p)(2) and the common-law D'Oench, Duhme doctrine. The NCUA's governing

statute, 12 U.S.C. § 1751 et seq., provides that, when the NCUA is acting as liquidating

agent of a credit union:

> No agreement which tends to diminish or defeat the right, title, or interest of
> the Board in any asset acquired by it under this subsection, either as
> security for a loan or by purchase, shall be valid against the [NCUA] Board
> unless such agreement–
> (A) shall be in writing;
> (B) shall have been executed by the credit union and the person or persons
> claiming an adverse interest thereunder, including the obligor,
> contemporaneously with the acquisition of the asset by the credit union;
> (C) shall have been approved by the board of directors of the credit union,
> which approval shall be reflected in the minutes of such board; and
> (D) shall have been, continuously, from the time of its execution, an official
> record of the credit union.

12 U.S.C. § 1787(p)(2). "The substantive language is identical to that in the provision

governing situations where the agency is acting as conservator of the credit union, see

12 U.S.C. § 1788(a)(3), and to the language of the comparable provision of the FDIC's

enabling statute, see 12 U.S.C. § 1823(e)." Savoy v. White, 788 F. Supp. 69, 72

(D. Mass. 1992). Accordingly, "[c]ase law interpreting the identical provision in these

other statutes is applicable to § 1787(p)(2) because all of the agencies which regulate

financial institutions are in the similar special position of safeguarding the interests of

the depositors at large." Savoy, 788 F. Supp. at 72.

The D'Oench, Duhme doctrine was adopted to protect the FDIC from secret

agreements not appearing in a bank's records, to encourage prudent lending and

proper recording of bank transactions, and to prevent collusive reconstruction of transaction terms.  See Langley v. FDIC, 484 U.S. 86, 93-94 (1987).  In D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942), a securities dealer executed a demand note with the understanding that the bank would not enforce the note.  The dealer sought to prevent the FDIC, which had acquired the note, from enforcing the note based on the secret agreement.  D'Oench, Duhme & Co. held as a matter of federal common law that the secret agreement could not support the defense against the FDIC because the secret agreement would tend to deceive the banking authorities, whose responsibility to protect the fiscal stability of financial institutions requires the ability to evaluate accurately a bank's assets and commitments.  D'Oench, Duhme & Co., 315 U.S. at 460.  However "the D'Oench doctrine has expanded beyond the factual background of the D'Oench case itself, so that it 'now applies in virtually all cases where a federal depository institution regulatory agency is confronted with an agreement not documented in the institution's records.'"  OPS Shopping Ctr., Inc. v. FDIC, 992 F.2d 306, 308 (11th Cir. 1993) (quoting Baumann v. Savers Fed. Sav. and Loan Ass'n, 934 F.2d 1506, 1510 (11th Cir. 1991)).  Under the expanded doctrine, "in a suit over the enforcement of an agreement originally executed between an insured depository institution and a private party, a private party may not enforce against a federal deposit insurer any obligation not specifically memorialized in a written document such that the agency would be aware of the obligation when conducting an examination of the institution's records."  Murphy v. FDIC, 208 F.3d 959, 963 (11th Cir. 2000) (quoting Baumann, 934 F.2d at 1515); see also Comty. Bank of Ozarks v. FDIC, 984 F.2d 254,

256 (8th Cir. 1993) ("The essence of D'Oench is that the FDIC is entitled to rely, to the exclusion of any extraneous matters, on the official bank records that set forth the rights and obligations of the bank and those to whom the bank lends money.")  Because the third-party plaintiffs' claims depend on side agreements not alleged (a) to be recorded in Huron's records and (b) to satisfy the other requirements of 12 U.S.C. § 1787(p)(2), the D'Oench, Duhme doctrine and 12 U.S.C. § 1787(p)(2) bar the claims against NCUA as Huron's liquidator.

The third-party plaintiffs' claims collide with D'Oench, Duhme.  First, the third-party plaintiffs apparently argue that D'Oench, Duhme and Section 1787(p)(2) apply to (Doc. 127 at 6) "defenses . . . to claims by government receivers or liquidators seeking to enforce the instrument" but not to affirmative claims for relief.  The third-party plaintiffs are mistaken.  See RTC v. Dunmar Corp., 43 F.3d 587, 597 (11th Cir. 1995); Hall v. FDIC, 920 F.2d 334, 340 (6th Cir. 1990) ("To allow a claim against the FDIC asserting the very grounds that could not be used as a defense to a claim by the FDIC is to let technicality stand in the way of principle.  Moreover, the effect of such an approach would be to reduce actions Congress has allowed the FDIC to pursue to nullities since defendants could counterclaim and recover what they lost."); Timberland Design, Inc. v. First Serv. Bank for Sav., 932 F.2d 46, 49-50 (1st Cir. 1991); Baxter Dunaway, The Law of Distressed Real Estate § 45:9 ("The D'Oench, Duhme doctrine precludes both defenses to and affirmative claims for relief.").

The third-party plaintiffs further argue that, to the extent that D'Oench, Duhme affords greater protection than Section 1787(p)(2), Section 1787(p)(2) preempts

D'Oench, Duhme.  To support the argument, the plaintiffs rely on Kessler v. National Enterprises, Inc., 165 F.3d 596 (8th Cir. 1999).  Kessler affirms the holding of DiVall Insured Income Fund Limited Partnership v. Boatmen's First National Bank of Kansas City, 69 F.3d 1398 (8th Cir. 1995), that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, as construed in O'Melveny & Myers v. FDIC, 512 U.S. 79 (1994), preempts D'Oench, Duhme.  Kessler,165 F.3d at 598.  However, the Eleventh Circuit has expressly rejected Divall.  See Motorcity of Jacksonville, Ltd. v. Se. Bank, N.A., 83 F.3d 1317, 1327 (11th Cir. 1996) (en banc) (Motorcity I), vacated and remanded by Hess v. FDIC, 519 U.S. 1087 (1997), reinstated by Motorcity of Jacksonville, Ltd. v. Se. Bank, N.A., 120 F.3d 1140 (11th Cir. 1997) (en banc); Murphy, 208 F.3d at 964.  In short, the plaintiffs' assertion that 12 U.S.C. § 1787(p)(2) preempts D'Oench, Duhme is impossible to reconcile with the Eleventh Circuit's holding that 12 U.S.C. § 1823(e), a substantively identical provision, does not preempt D'Oench, Duhme.

The third-party plaintiffs also argue that D'Oench, Duhme and Section 1787(p)(2) are inapplicable because the alleged side agreement between the third party plaintiffs and Huron (a) was intended to protect (and, if performed, would have protected) the assets that NCUA acquired from Huron and (b) is not therefore the sort of side agreement, harmful to the bank's depositors and creditors, contemplated by D'Oench, Duhme and its statutory counterpart.  However, this argument both misidentifies the pertinent assets (which are the notes and mortgages acquired by NCUA, and not merely the collateral securing them) and fails to account for the obvious possibility (on

which the third-party plaintiffs' claims otherwise depend) that the alleged side agreements affect the enforceability–and hence the value–of the notes and mortgages in a manner not evident in Huron's records.

Further, the cases cited in the third-party plaintiffs' response do not support their argument. <u>Kessler</u> refuses to apply Section 1823(e) to "<u>non-banking transactions</u> or other types of agreements which would not customarily be 'scrutinized, approved, and recorded by the bank's executive committee or board,'" <u>Kessler</u>, 165 F.3d at 599 (emphasis added), for example, to "the many agreements between the borrower and third parties that might affect the value of the underlying collateral" but are not subjected to the formal scrutiny, approval, and documentation by the bank's authorized lending officers, <u>Kessler</u>, 165 F.3d at 599. Similarly, <u>Thigpen v. Sparks</u>, 983 F.2d 644, 647 (5th Cir. 1993) refuses to apply Section 1823(e) to a dispute involving "neither a loan transaction, actual or contemplated, between a borrower and lender nor a conventional banking transaction of any kind, but rather the bank's sale of an asset to . . . an individual who on the record . . . had no other connection with the bank . . . ." However, the third-party plaintiffs seek to evade the application of <u>D'Oench, Duhme</u> and Section 1787(p)(2) to a conventional banking transaction between lender and borrower. <u>See OPS Shopping Ctr.</u>, 992 F.2d at 310-11 (applying <u>D'Oench, Duhme</u> to "claims arising out of regular banking transactions, a record of which one would expect to be reflected in the records of the bank's regular banking transactions.").

The third-party plaintiffs further assert that <u>D'Oench, Duhme</u> and Section 1787(p)(2) are inapplicable because the agreements at issue (<u>i.e.</u>, Huron's alleged

promises to inspect the properties before releasing the construction loan funds) "can be found on the face of the . . . construction loan contracts."[2]  Specifically, the third-party plaintiffs assert (Doc. 127 at 10) that the construction loan contracts "state that the lender would have the authority to inspect the construction of the buildings and withhold the monies from the loan proceeds if the construction is not according to the specs." However, the third-party plaintiffs provide no support for this conclusory equation of (a) the Banks' right to inspect and to withhold funds with (b) an obligation on the part of the Banks to the borrowers to inspect and to ensure that the construction accords with the building contracts.  Further, the equation appears foreclosed by the plain language of the construction contracts, which are attached to and therefore incorporated into the complaint.[3]

> Borrower shall permit Lender . . . the authority to inspect the Property at such times and places as Lender deems necessary or at such other reasonable time for the sole purpose of determining the approximate completion of construction.  In no event shall Lender inspect the Property for the purpose of insuring compliance with plans and specification . . . .  Said inspections are conducted solely for the benefit of Lender, and Borrower has no right to rely upon any such inspection in any manner whatsoever.[4]

---

[2]  Doc. 127 at 10; see also Doc. 127 at 6 (stating that "the 'agreement' (misrepresentations made by Huron) [is] contained on the face of the written agreements . . . ."); Doc. 127 at 6 ("This 'agreement' (misrepresentations) [is] contained on the face of the Construction Loan documents . . . .").

[3]  See Fed. R. Civ. P. 10(c).  NCUA erroneously states (Doc. 145 at 10) that the "Third Party Plaintiffs have failed to attach any written contract to the Third-Party Complaint."

[4]  Doc. 7-2 at 31-32 (Jeremy Schwartz); see also Doc. 7-4 at 6-7 (Sharon Schwartz); Doc. 7-5 at 11-12 (David Schwartz).  Cf. Doc. 7-7 at 9 (Mitchell Davie).

Indeed, the plaintiffs admit elsewhere in their response (Doc. 127 at 12) that, although each Bank's representatives orally represented that the Bank would inspect the units to ensure construction in accord with the specifications in the building contracts:

> the bank inserted language [into the construction loan contracts] saying that the bank had the right but not the obligation which completely contradicted the oral representations made to plaintiffs and caused plaintiffs to rely on such statements and sign the loan agreements, [mistakenly] thinking that the loan agreement contained the terms outlined in the oral representation.

This description of the written agreements accords with their plain language and renders unintelligible the third-party plaintiffs' repeated assertion that the bank's obligation to inspect is apparent "on the face of the . . . construction loan contracts." The complaint's allegations that the Banks agreed to inspect plainly relies on unrecorded oral misrepresentations. However, because the NCUA was entitled to rely on Huron's records to ascertain the extent of Huron's contractual obligations, D'Oench, Duhme prevents the third-party plaintiffs from relying on the representations to alter or to explain the written loan terms. See Motorcity I, 83 F.3d at 1336.[5]

The third-party plaintiffs further argue that D'Oench, Duhme and Section 1787(p)(2) are inapplicable because the fraud alleged in the complaint consists of "fraud in the factum." See Langley, 484 U.S. at 93-94 (noting in dictum that Section 1823(e) will not bar real defenses such as fraud in the factum, which render an interest void

---

[5] See also FSLIC v. Two Rivers Assocs., Inc., 880 F.2d 1267, 1276 (11th Cir. 1989) (refusing to consider extrinsic evidence to interpret loan terms because the evidence appeared nowhere in the bank's records); FDIC v. Merchants Nat'l Bank of Mobile, 725 F.2d 634, 639 (11th Cir. 1984) (rejecting use of extrinsic evidence not meeting the requirements of § 1823(e) to determine whether the bank's participation in a loan was guaranteed by the Farmers Home Administration); FDIC v. Bay Street Dev. Corp., 32 F.3d 636, 640 (1st Cir. 1994) ("[O]f course, extrinsic evidence of additional [loan] terms is inadmissible against [the] FDIC.").

rather than voidable);[6] see also FDIC v. Aetna Cas. & Sur. Co., 947 F.2d 196, 202 n.4

(6th Cir. 1991) ("Circuit courts have generally held that assets that are void, as opposed

to voidable, are not subject to the requirements of section 1823(e)."); Federal Sav. &

Loan Ins. Corp. v. Gordy, 928 F.2d 1558, 1565 (11th Cir. 1991) (assuming without

deciding that allegations of fraud in the factum precludes application of the D'Oench,

Duhme doctrine).[7]  Fraud in the factum is "the sort of fraud that procures a party's

signature to an instrument without knowledge of its true nature or contents." Langley,

484 U.S. at 93 (citing U.C.C. § 3-305(2)(c), Comment 7 (1977)); see also Section

673.3051(1)(a)(3), Florida Statutes; Restatement (Second) of Contracts § 163 (1981)

("If a misrepresentation as to the character or essential terms of a proposed contract

induces conduct that appears to be a manifestation of assent by one who neither knows

nor has reasonable opportunity to know of the character or essential terms of the

proposed contract, his conduct is not effective as a manifestation of assent.").  Although

fraud in the factum arguably precludes application of D'Oench, Duhme, "[f]raud in the

inducement, which does not go to the very essence of the agreement but rather merely

induces the party to enter the agreement, would not have the same effect because it

would render the instrument merely voidable and thus capable of transfer." Gordy, 928

F.2d at 1565 (citing Langley, 484 U.S. at 93-94).

---

[6] Although Langley involved the interpretation of 12 U.S.C. § 1823(e), "courts have referred to section 1823(e) and the cases interpreting it as guidelines for the application of the D'Oench doctrine." Vernon v. RTC, 907 F.2d 1101, 1105 (11th Cir. 1990).

[7] But see McLemore v. Landry, 898 F.2d 996, 1002 (5th Cir. 1990) ("We . . . have declined to read dictum [in Langley] as creating an exception to D'Oench for allegations of fraud in the factum").

If properly elaborated to comply with Rule 9(b), Federal Rules of Civil Procedure, certain allegations in the complaint might support a claim for fraud in the inducement. However, they do not support a claim for fraud in the factum. The complaint does not allege that the third-party plaintiffs executed the pertinent agreements without knowledge of their true nature or content. The complaint does not even allege (what the third-plaintiffs apparently assert in their response [Doc. 127 at 12)]) that the Banks misrepresented the terms of the written agreements to induce the plaintiffs to execute the agreements. Instead, the complaint alleges that the Banks undertook obligations (to inspect and to ensure that the construction proceeded in accord with the building contract) not imposed by the written agreements and, to induce the third-party plaintiffs to authorize release of the loan funds, subsequently misrepresented both the bank's performance of the obligations and the results of the purported inspections. Accordingly, the complaint states no claim for fraud in the factum.

Finally, the "free-standing tort exception" to D'Oench, Duhme does not save the third-party plaintiffs' fraud claims. Although the complaint alleges that the Banks falsely represented that the agreed-upon inspections "had in fact been completed [and] that the . . . Units were being built to specifications," the misrepresentations are inseparable from the unrecorded agreement to conduct the inspections. The misrepresentations consist in assurances that the Banks had properly performed the obligations imposed by the unrecorded agreement. The fraud claims rely on the unrecorded agreement, and that reliance is barred by D'Oench, Duhme**. See Motorcity I, 83 F.3d at 1337-38; RTC v. Dunmar Corp., 43 F.3d at 595; see also In re NBW Commercial Paper Litig., 826 F.

Supp. 1448, 1455 (D.D.C. 1992) (noting that most courts have refused to permit plaintiffs to recast their contract claims as torts to evade D'Oench, Duhme: "In these cases, the courts have refused to distinguish on the grounds of technical differences in pleading when the allegations actually center around an oral agreement and an arrangement which would tend to mislead bank examiners.").

In short, with the possible exception of count V (which conveys no definite idea of the Banks' alleged misrepresentations to Sharon Schwartz, David Schwartz, Mitchell Davie, and Victor Selvaggi, and therefore fails to comply with Rules 8(a) and 9(b), Federal Rules of Civil Procedure), all the third-party plaintiffs' claims against NCUA rely on unrecorded agreements and representations in connection with a conventional banking transaction. Because D'Oench, Duhme and 12 U.S.C. § 1787(p)(2) preclude that reliance, the complaint fails to state a claim under Florida law against NCUA as Huron's liquidator. Additionally, the counts sounding in fraud utterly fail to comply with the heightened pleading requirement of Rule 9(b), Federal Rules of Civil Procedure.[8]

### CONCLUSION

NCUA's motion (Docs. 119) to dismiss the third-party claims against NCUA is **GRANTED** to the extent that the third-party plaintiffs' claims again NCUA are **DISMISSED** with leave to re-plead. On or before **May 25, 2009**, the third-party plaintiffs

---

[8] See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1371 (11th Cir. 1997) (Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.").

may file an amended complaint.  An amended complaint shall comply with Rules 9(b),

Federal Rules of Civil Procedure, and state the circumstances constituting fraud with

respect to Huron in particular, and shall assert no claim against NCUA (or against

"Banks" defined to include NCUA) on behalf of any third-party plaintiff whose

construction loans was neither executed by nor assigned to Huron.  Failure to amend

timely will result in dismissal with prejudice as to NCUA.

ORDERED in Tampa, Florida, on April 22, 2009.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE